United States Courts
Southern District of Texas
FILED
*February 15, 2022*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.   § | **CRIMINAL NO. 4:22-CR-33-S1** |
| § | |
| § | Sealed |
| **(1) HEATHER ANN CAMPOS** § | Public and unofficial staff access |
| aka **JILL TURNER**; § | to this instrument are |
| **(2) DAVID LEWIS BEST, Jr.**; § | prohibited by court order |
| **(3) SHYANNE EDRINGTON** § | |
| aka **LAURA HALL**; § | **UNDER SEAL** |
| **(4) LESLIE EDRINGTON** § | |
| aka **ROBIN SMITH**; § | |
| **(5) MELINDA MUNOZ** § | |
| aka **MELINDA GARCIA**; § | |
| **(6) ELVINA BUCKLEY**; and § | |
| **(7) STEPHEN LAVERNE CRABTREE** § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment:

1. United Wholesale Mortgage was a mortgage lending business.

2. International Bank of Commerce was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

3. Citizens Bank, N.A. was a financial institution, the deposits of which were insured by the FDIC.

4. Home Point Financial Corporation was a mortgage lending business.

5. NewRez LLC was a mortgage lending business.

6. Caliber Home Loans, Inc. was a mortgage lending business.

7. Defendant HEATHER ANN CAMPOS aka JILL TURNER (CAMPOS) was a resident of Spring, Texas.

8. Defendant DAVID LEWIS BEST, Jr. (BEST) was a resident of California and Spring, Texas.

9. Defendant SHYANNE EDRINGTON aka LAURA HALL (SHYANNE) was a resident of Spring, Texas.

10. Defendant LESLIE EDRINGTON aka ROBIN SMITH (LESLIE) was a resident of Spring, Texas.

11. Defendant MELINDA MUNOZ aka MELINDA GARCIA (MUNOZ) was a resident of the Houston area in Texas.

12. Defendant ELVINA BUCKLEY (BUCKLEY) was a resident of Spring, Texas.

13. Defendant STEPHEN LAVERNE CRABTREE (CRABTREE) was a resident of the greater Salt Lake City area in Utah.

14. In or around 2000, CAMPOS began working in the mortgage industry in Houston, Texas, and surrounding areas. CAMPOS later became a loan officer and mortgage broker for various companies. As a loan officer and mortgage broker, CAMPOS facilitated mortgages for residential properties for customers, family members, and later, for her co-conspirators. BUCKLEY acted as the realtor for CAMPOS's customers, family members, and later, their co-conspirators, including straw buyers of residential properties. MUNOZ was a commissioned notary and notarized various documents for her co-conspirators.

## COUNT 1
### False Statement to a Mortgage Lending Business
### (18 U.S.C. § 1014)

15. On or about March 18, 2016, within the Southern District of Texas and elsewhere, the Defendant

**(1) HEATHER ANN CAMPOS**
**aka JILL TURNER**

knowingly and willfully made a false statement and report for the purpose of influencing the actions of Caliber Home Loans, Inc., a mortgage lending business, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the property at 31111 Purdue Park Lane, Spring, Texas, that is, false statements concerning the borrower's qualifications, including but not limited to the borrower's employment, income, assets, and bank statements, in violation of 18 U.S.C. § 1014.

## COUNT 2
### False Statement to a Mortgage Lending Business
### (18 U.S.C. § 1014)

16. On or about May 12, 2017, within the Southern District of Texas and elsewhere, the Defendant

**(1) HEATHER ANN CAMPOS**
**aka JILL TURNER**

knowingly and willfully made a false statement and report for the purpose of influencing the actions of Caliber Home Loans, Inc., a mortgage lending business, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the property at 3390 Ashton Springs Lane, Pearland, Texas, that is, false statements concerning the borrower's qualifications, including but not limited to the borrower's assets and bank statements, in violation of 18 U.S.C. § 1014.

## COUNT 3
### Conspiracy to Make False Statements and Writings
### (18 U.S.C. § 371)

17. The Grand Jury realleges the factual allegations set forth above in Paragraphs 1-14 and incorporates them as if fully set forth in Count 3 of this Indictment.

18. From in or around August 2017 through in or around July 2021, within the Southern District of Texas and elsewhere, Defendants

**(1) HEATHER ANN CAMPOS
aka JILL TURNER,
(2) DAVID LEWIS BEST, Jr.,
(3) SHYANNE EDRINGTON
aka LAURA HALL,
(4) LESLIE EDRINGTON
aka ROBIN SMITH,
(5) MELINDA MUNOZ
aka MELINDA GARCIA,
(6) ELVINA BUCKLEY, and
(7) STEPHEN LAVERNE CRABTREE**

did knowingly and willfully combine, conspire, confederate, and agree with one or more persons known and unknown to the Grand Jury to commit certain offenses against the United States, namely: (1) to knowingly and willfully make false statements in loan applications for the purpose of influencing mortgage lending businesses and financial institutions, in violation of 18 U.S.C. § 1014 (false statement to mortgage lending businesses and financial institutions) and (2) to willfully and knowingly make and use false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries in a matter within the jurisdiction of the executive branch of the Government of the United States, by submitting reports falsely claiming identity theft to the Federal Trade Commission for debts incurred, well knowing and believing that the debts were in fact incurred, in violation of 18 U.S.C. § 1001(a)(3) (false writing to a government agency).

## PURPOSE OF THE CONSPIRACY

19. Using various entity names such as Jeff Funding, KMD Credit, and KMD Capital, Defendants CAMPOS, BEST, SHYANNE, LESLIE, MUNOZ, and BUCKLEY (collectively, the Jeff Funding Defendants) operated a multi-layered fraud scheme involving credit repair, bank fraud, and mortgage fraud. It was a purpose of the conspiracy for the Jeff Funding Defendants and their co-conspirators, known and unknown to the Grand Jury, to unlawfully enrich themselves by recruiting credit repair clients like CRABTREE to fraudulently "clean" the client's credit history so they could fraudulently obtain various loans, including mortgages.

20. After a client received a loan or a mortgage, the Jeff Funding Defendants claimed a percentage of the loan proceeds, as a fee or a commission. The Jeff Funding Defendants also obtained loans for themselves and others involved in the conspiracy and used the funds for their operating costs and personal expenses.

## MANNER AND MEANS OF THE CONSPIRACY

21. The Jeff Funding Defendants and their co-conspirators, known and unknown to the Grand Jury, recruited clients and offered to "clean" and improve their credit. The Jeff Funding Defendants recruited clients from across the United States, promising to obtain "funding," or loans for clients after "cleaning" the clients' credit histories.

22. The Jeff Funding Defendants and their co-conspirators did so by blocking debts and bankruptcies listed on a client's credit report by making a false report, under penalty of perjury, to the Federal Trade Commission (FTC) and claiming that the debts and bankruptcies listed were due to the client being a victim of identity theft.

23. After filing the identity theft report with the FTC, the Jeff Funding Defendants and their co-conspirators sent the FTC identity theft report and other documents to the credit bureaus,

demanding that the debts be removed from the client's credit report. The Jeff Funding Defendants requested clients, like CRABTREE, to provide certain documentation to remove bankruptcies from the client's credit report, although the client and the Jeff Funding Defendants knew that the bankruptcies were accurately reported. As a result of claiming identity theft, the client's credit score would generally improve.

24. Due to the high volume of clients and to obtain cheap labor, the Jeff Funding Defendants and their co-conspirators hired employees in Mexico to submit the FTC identity theft reports online and to assist in operating the fraudulent scheme.

25. After a client's credit score improved, the Jeff Funding Defendants offered to obtain unsecured personal loans and credit cards, among other "funding," on behalf of the client. Sometimes, the Jeff Funding Defendants instructed clients to directly apply for loans by claiming an "enhanced" income, listing a fake employer, and making other false statements.

26. Other times, the Jeff Funding Defendants directly submitted the loan applications on behalf of the clients. The Jeff Funding Defendants and their co-conspirators facilitated these loans by including false statements and fake documents in the loan applications, which were then submitted to the lenders. The false qualifying loan information included employment, employment verification, intended purpose of the loan proceeds, income, assets, and fake bank account statements. The Jeff Funding Defendants and their co-conspirators set up fake companies and websites to make it appear as if their clients were legitimately employed at these companies. The Jeff Funding Defendants and co-conspirators, however, controlled the contact information for the fake companies and using aliases, verified employment information for the clients and other co-conspirators.

27.     When a lender called a loan applicant with questions, the Jeff Funding Defendants either coached the client as to the answers or pretended to be the client and gave false answers.

28.     After a loan was approved, the Jeff Funding Defendants and their co-conspirators demanded a percentage of the loan proceeds from the client.   In some cases, the client would again default on the loan payments, which would then be reported to the credit bureaus and lower the client's credit score.   The Jeff Funding Defendants would "clean" the client's credit history again, by falsely claiming identity theft to the FTC and the credit bureaus.

29.     The Jeff Funding Defendants and their co-conspirators also offered to fraudulently boost a client's credit score by obtaining a mortgage in the client's name and using the client as a straw buyer of the residential property, although the client did not intend to reside at the property or pay the mortgage.   BUCKLEY found properties for the Jeff Funding Defendants, knowing that the properties would be held in the names of straw buyers and collected real estate commissions after closings.   The Jeff Funding Defendants and their co-conspirators recruited clients from Texas and other states in the United States.

30.     The mortgage applications contained false information and fake documents about the straw buyers' contact information, employment, income, assets, and the buyers' intent to make the residence their "primary residence," among other false information.   MUNOZ served as the notary for Jeff Funding and falsely notarized documents that the clients did not actually sign.   The Jeff Funding Defendants and their co-conspirators included false contact information for the client, including telephone numbers and email accounts, so that when a lender contacted the straw buyer, the Jeff Funding Defendants and their co-conspirators would be notified and respond directly to the lender, pretending to be the client.

31. For mortgages that CAMPOS had brokered, after approval, CAMPOS collected the mortgage broker fees. The Jeff Funding Defendants and other co-conspirators then rented out the properties to tenants, who were often instructed not to contact the listed homeowners.

32. Capitalizing on the response to the COVID-19 global pandemic and economic crisis, the Jeff Funding Defendants took advantage of various programs to suspend mortgage payments for the properties, even while collecting rental payments from the tenants and rental assistance programs. If a mortgage were to go into default, the straw buyer would be the responsible party.

## OVERT ACTS

33. In furtherance of the conspiracy and to achieve the purpose and objects thereof, CAMPOS, BEST, SHYANNE, LESLIE, MUNOZ, BUCKLEY, and their co-conspirators, including CRABTREE, known and unknown to the Grand Jury, committed at least one of the following overt acts, among others:

34. On or about July 18, 2018, CAMPOS, as the mortgage broker, submitted an employment verification request for BEST to Second Chance CPR Inc. so that BEST could purchase 3722 West Benders Landing Blvd, Spring, Texas as a straw buyer. CAMPOS did not disclose to the lender that Second Chance CPR Inc. was a company created by CAMPOS. CAMPOS, using the alias JILL TURNER, falsely verified employment and income for BEST, who purported to be the "Accounting Manager" at Second Chance CPR Inc.

35. On or about August 16, 2018, CAMPOS, as the mortgage broker, requested verification of employment for the straw buyer for the property at 3807 Oakfield Forest Lane, Spring, Texas. Then, using the alias JILL TURNER, CAMPOS verified employment and income for the straw buyer who purported to be a "Consulting Manager" at Second Chance CPR Inc.

36. On or about October 22, 2018, BUCKLEY provided her bank statements to be fraudulently used in a mortgage application for the property at 30714 Lavender Trace Drive, Spring, Texas. The bank statement was doctored to show that the buyer had a joint account with BUCKLEY, to falsely inflate his assets. The buyer, however, was not a joint account owner on BUCKLEY's account.

37. On or about May 7, 2019, while refinancing the property at 3722 West Benders Landing Blvd, BEST submitted a letter stating that his employer, Digital Networks LLC, was based in Florida and that he worked remotely from his residence in Spring, Texas.

38. To induce the lender into believing that the fake companies were legitimate, the Defendants and their co-conspirators set up websites for fake companies such as Cali Networks, LLC, Digital Networks LLC, First In First Out, and Radiate LLC, among others. These websites had contact information for the fake companies that were also controlled by the Defendants and their co-conspirators. At times, SHYANNE made voice recordings of telephone directories for the fake companies and inserted the straw buyer's name in the directory, so that when a lender called to verify employment, the fake company appeared to be legitimate, and the straw buyer appeared to be employed at the fake company.

39. On or about May 13, 2019, LESLIE asked CRABTREE to obtain documents so that she and her co-conspirators could remove bankruptcies from CRABTREE's credit history. LESLIE also instructed CRABTREE and other clients to make false statements in various loan applications, by telling them to "enhance" their income in the applications.

40. On or about June 17, 2020, MUNOZ made the down payment and closing costs on 2514 Bycreek Drive, Houston, Texas, in the name of an out-of-state straw buyer. MUNOZ also

notarized some of the closing documents. MUNOZ then resided at the property and made the mortgage payments.

41. On or about December 21, 2020, SHYANNE counseled a client regarding the effect of a vehicle loan on the client's credit history and potential future "funding." SHYANNE stated that after the client obtained the vehicle loan, she would remove the resulting credit inquiries from the client's credit report.

42. The Jeff Funding Defendants and their co-conspirators created email addresses and obtained numerous "burner phones" for purposes of this scheme. In many cases, the email addresses and phone numbers used for the straw buyers were assigned by the Defendants and their co-conspirators. When a bank or mortgage lending business attempted to contact a straw buyer, the Jeff Funding Defendants responded to the email or answered the phone, pretending to be the straw buyer, all in violation of 18 U.S.C. § 371.

### COUNTS 4-17
### False Statements to Mortgage Lending Businesses and Federally Insured Institutions
### (18 U.S.C. § 1014)

43. The Grand Jury realleges and incorporates the factual allegations set forth above in Paragraphs 1-14 and 19-42 and incorporates them as if fully set forth in Counts 4-17 of this Indictment.

44. On or about the dates set forth below, in the Southern District of Texas and elsewhere, the Defendants set forth below knowingly and willfully made false statements and reports for the purpose of influencing the actions of the mortgage lending businesses and financial institutions set forth below, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the properties set forth below, by making false statements and reports regarding the borrowers' qualifications, including

but not limited to the borrowers' income, employment, assets, liabilities, bank statements, and primary residence status:

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 4 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(2) DAVID LEWIS BEST, JR. | 8/20/2018 | United Wholesale Mortgage | 3722 West Benders Landing Blvd Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 5 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(2) DAVID LEWIS BEST, JR. | 8/20/2018 | International Bank of Commerce | 3722 West Benders Landing Blvd Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 6 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 9/5/2018 | Citizens Bank, N.A. | 3807 Oakfield Forest Lane Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 7 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(6) ELVINA BUCKLEY | 10/26/2018 | United Wholesale Mortgage | 30714 Lavender Trace Drive Spring, TX | Assets and bank statements |
| 8 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(2) DAVID LEWIS BEST, JR. | 6/3/2019 | Citizens Bank, N.A. | 3722 West Benders Landing Blvd Spring, TX | Employment, income, and primary residence status |
| 9 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(4) LESLIE EDRINGTON aka ROBIN SMITH<br><br>(6) ELVINA BUCKLEY | 7/31/2019 | Citizens Bank, N.A. | 4339 Foggy Creek Lane Spring, TX | Assets, liabilities, and bank statements |
| 10 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 8/22/2019 | Citizens Bank, N.A. | 7 Abbey Brook Place The Woodlands, TX | Employment, income, assets, bank statements, and primary residence status |

11

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 11 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 8/28/2019 | Citizens Bank, N.A. | 16623 Wheat Mill Lane Houston, TX | Income, assets, bank statements, and primary residence status |
| 12 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 2/11/2020 | Home Point Financial Corporation | 3807 Oakfield Forest Lane Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 13 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 2/14/2020 | Home Point Financial Corporation | 629 17th Avenue North Texas City, TX | Employment, income, assets, bank statements, and primary residence status |
| 14 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 2/20/2020 | NewRez LLC | 9406 Bob White Drive Houston, TX | Employment, income, assets, bank statements, and primary residence status |
| 15 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 4/17/2020 | Home Point Financial Corporation | 10218 Antelope Alley Missouri City, TX | Employment, income, and primary residence status |
| 16 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(5) MELINDA MUNOZ aka MELINDA GARCIA | 6/17/2020 | Home Point Financial Corporation | 2514 Bycreek Drive Houston, TX | Employment, income, assets, bank statements, and primary residence status |
| 17 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 6/19/2020 | Home Point Financial Corporation | 26034 Mills Ridge Court Kingwood, TX | Employment, income, assets, bank statements, and primary residence status |

all in violation of 18 U.S.C. §§ 1014 and 2.

## COUNTS 18-20
### False Writings to the Federal Trade Commission
### (18 U.S.C. § 1001)

45.    The Grand Jury re-alleges and incorporates the factual allegations set forth above in Paragraphs 1-14 and 19-42 and incorporates them as if fully set forth in Counts 18-20 of this

Indictment.

46. On or about the dates set forth below, in the Southern District of Texas and elsewhere, the Defendants set forth below willfully and knowingly made and used false writings and documents, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States, by submitting reports falsely claiming identity theft to the Federal Trade Commission for debts incurred, well knowing and believing that the debts had been incurred by the listed individuals:

| Ct. | Defendants | Date | False Writing and Document |
|---|---|---|---|
| 18 | (4) LESLIE EDRINGTON aka ROBIN SMITH  (7) STEVEN LAVERNE CRABTREE | 2/12/2020 | Identity theft report for CRABTREE |
| 19 | (1) HEATHER CAMPOS aka JILL TURNER | 12/17/2020 | Identity theft report for M.S. |
| 20 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 5/3/2021 | Identity theft report for J.S. |

in violation of 18 U.S.C. §§ 1001(a)(3) and 2.

**COUNT 21**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

47. From in or around April 2020 through in or around July 2021, within the Southern District of Texas and elsewhere, Defendants

**(1) HEATHER ANN CAMPOS**
**aka JILL TURNER,**
**(3) SHYANNE EDRINGTON**
**aka LAURA HALL,**
**(4) LESLIE EDRINGTON**
**aka ROBIN SMITH, and**
**(7) STEPHEN LAVERNE CRABTREE**

did knowingly and intentionally conspire with others known and unknown to the Grand Jury to commit the offense of knowingly and with the intent to defraud, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted writings, signs, signals, pictures and signs by means of wire in interstate and foreign commerce for the purpose of executing such a scheme and artifice in violation of 18 U.S.C. § 1343 (wire fraud), in violation of 18 U.S.C. § 1349.

## PURPOSE OF THE CONSPIRACY

48. It was a purpose of the conspiracy for the Defendants and their co-conspirators, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by capitalizing on the emergency financial assistance provided in response to the COVID-19 pandemic and obtaining money from the Small Business Administration (SBA) and financial institutions by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE CONSPIRACY

49. The Defendants and their co-conspirators, using the entity names Jeff Funding and North Moon Group, among others, offered to obtain money from the SBA and from financial institutions by submitting loan applications and supporting documentation on behalf of themselves, other co-conspirators, and their clients. In exchange, the Defendants and their co-conspirators took a percentage from the loan proceeds.

50. The Defendants and their co-conspirators received intake applications from clients all around the United States. The Defendants and their co-conspirators created login and account

information for their clients for the purpose of submitting the loan applications to the SBA and to financial institutions.

51. The Defendants and their co-conspirators disguised the fact that they were acting as agents and brokers on behalf of their clients. To further disguise the fact that the application was being submitted by the Defendants and their co-conspirators, they set up Internet Protocol (IP) addresses that appeared to originate from the client's state of residence, rather than the Spring, Texas and surrounding areas.

52. The Defendants and their co-conspirators also falsified the client's information, such as the client's business gross revenues and dates of business operations, to fraudulently induce the lenders and the SBA into approving the loan applications.

53. When a lender contacted a client directly, the Defendants and their co-conspirators contacted each other so that they could make sure to "say the right things" to the lender.

54. The Defendants and their co-conspirators used the internet to submit Economic Injury Disaster Loan (EIDL) and Paycheck Protection Program (PPP) applications that contained false information, including the gross revenues of the purported business and the number of employees.

55. After a loan was approved, the Defendants and their co-conspirators sent the customer an invoice, for approximately 20% of the loan proceeds, in violation of 18 U.S.C. § 1343 (wire fraud), all in violation of 18 U.S.C. § 1349 (wire fraud conspiracy).

### COUNTS 22-25
### Wire Fraud
### (18 U.S.C. § 1343)

56. The Grand Jury realleges Paragraphs 48-55 of this Indictment and incorporates them as if fully set forth in Counts 22-25 of this Indictment.

57. On or about the dates listed below, in the Southern District of Texas and elsewhere, for the purpose of executing the scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and attempting to do so, the Defendants set forth below did knowingly transmit and caused to be transmitted by means of wire communication in and affecting interstate commerce, the writings, signals, and sounds described below:

| Ct. | Defendants | Date | Wire Communication |
|---|---|---|---|
| 22 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 10/2/2020 | Electronic submission to SBA for EIDL application for M.W. |
| 23 | (1) HEATHER ANN CAMPOS aka JILL TURNER | 10/5/2020 | Electronic signing of note for EIDL funds of $125,000 for M.W. |
| 24 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(3) SHYANNE EDRINGTON AKA LAURA HALL | 4/30/2021 | Electronic submission for PPP application for ShyAnne Edrington |
| 25 | (1) HEATHER ANN CAMPOS aka JILL TURNER<br><br>(3) SHYANNE EDRINGTON aka LAURA HALL | 5/14/2021 | Electronic signing of note for PPP funds of $20,832 for ShyAnne Edrington |

in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF FORFEITURE
### 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to 18 U.S.C. § 982(a)(2), 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), the United States gives notice to Defendants

**(1) HEATHER ANN CAMPOS
aka JILL TURNER,
(2) DAVID LEWIS BEST, Jr.,
(3) SHYANNE EDRINGTON
aka LAURA HALL,
(4) LESLIE EDRINGTON
aka ROBIN SMITH,
(5) MELINDA MUNOZ**

aka MELINDA GARCIA,
(6) ELVINA BUCKLEY, and
(7) STEPHEN LAVERNE CRABTREE

that upon conviction under this Indictment for making a false statement to mortgage lending businesses and financial institutions and for committing wire fraud and for conspiracy to do so, in violation of 18 U.S.C. §§ 371, 1014, 1343, 1349, the United States will seek the forfeiture of any property constituting or derived from proceeds obtained, directly or indirectly. as the result of such violations.

### Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that one or more conditions listed in 21 U.S.C. § 853(p) exists, the United States will seek to forfeit any other property of the defendants in substitution, up to the amount of the money judgment against that defendant.

TRUE BILL:

ORIGINAL SIGNATURE ON FILE

JENNIFER B. LOWERY
United States Attorney

By: _____
EUN KATE SUH
JAY HILEMAN
Assistant United States Attorneys

17